**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

OCT 1 2 2011

DAVID J. MALAND, CLERK
BY
DEPUTY _____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. 4:11CR*201* |
| v. | § | Judge *Crone* |
| | § | |
| DAVID LAMOND DIGGLES (1) | § | |
| KRIS BECK GARDNER (2) | § | |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### Count One

Violation: 18 U.S.C. § 1349
(Conspiracy to Commit Mail Fraud)

Introduction

At all times material to this Indictment:

1.      Defendant **David Lamond Diggles (Diggles)** owned, operated, and controlled DLD Holdings, First USA Properties, Fresh Start Investments, DIGG-UZZ General Contractors, LLC, and S.O.W. Life Changing Ministries Church.

2.      Defendant **Kris Beck Gardner (Gardner)** was an escrow officer with Capital Title of Texas and acted as a point of contact between mortgage brokers, mortgage lenders, and buyers and sellers of real estate in order to arrange, facilitate, and monitor real estate property closings.

3.      S.M. and S.B. (collectively "Mortgage Brokers") were loan officers or brokers who prepared and submitted loan applications to lenders in order to obtain mortgage loans for individual borrowers.

4.      M.W., O.P., L.B., L.A., and D.H. (collectively "Straw Buyers") were individuals solicited by **Diggles** to invest in real estate by using their credit to qualify for and obtain mortgage loans in exchange for payments.

5.      R.K., M.R., and G.C. (collectively "Property Appraisers") were real estate appraisers licensed by the state of Texas and responsible for independently appraising the value of houses and causing the independent appraisals to be submitted to Lending Institutions.

6.      The following business entities were lending institutions or entities that were affiliated with lending institutions (collectively "Lending Institutions") that accepted applications for and funded or assisted with the funding of mortgage loans: Freedom Mortgage Corporation, Superior Lending Corporation, Greenpoint Mortgage, and Fieldstone Mortgage Company.

**The Conspiracy and its Objects**

7.      Between on or about January 5, 2004 and on or about July 16, 2007, in the Eastern District of Texas and elsewhere, **Diggles** and **Gardner** knowingly and willfully conspired, confederated, and agreed with each other and with S.M., S.B., M.R., R.K., G.C., and other individuals both known and unknown to the United States Grand Jury to devise a scheme and artifice to defraud the Lending Institutions and to obtain money from the Lending Institutions by making materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme and artifice, caused matter to be sent or delivered by the United States Postal Service and by private and commercial interstate carriers, a violation of 18 U.S.C. § 1341.

**Manner and Means of the Conspiracy**

8.      The purpose of the conspiracy was to defraud Lending Institutions by inducing them

to lend funds for the purchase of residential properties at inflated values through the use of materially

false representations, and in so doing, to fraudulently obtain a portion of those funds.  It was part of

the manner and means of the conspiracy that **Diggles,** in the Eastern District of Texas and elsewhere,

arranged for the following type of fraudulent transaction to occur involving residential properties:

(a)     **Diggles** located a house for sale and negotiated the sales price with the seller.  **Diggles** induced the seller of the house to agree that if the house appraised for a higher value than the asking price of the house, any amount in excess of the asking price that was received from the sale of the house would be retained by **Diggles**.  This agreement, though material, was never disclosed to a Lending Institution.

(b)     In exchange for payment from **Diggles,** a Property Appraiser fraudulently inflated the value of the house for resale purposes to an amount that was often hundreds of thousands of dollars in excess of the previous asking price and submitted the fraudulent appraisal to a Lending Institution with knowledge that the Lending Institution would and did materially rely upon the fraudulent appraisal in making a mortgage loan.

(c)     **Diggles** contacted a Straw Buyer who had good credit and solicited his or her participation in the scheme by representing that **Diggles** would use the Straw Buyer's name and credit to purchase the house in exchange for payments for as much as $10,000 per house.

(d)     **Diggles** represented to the Straw Buyer that his or her credit information was needed only to make the initial purchase of the house, and that once purchased, the Straw Buyer would not be responsible for payments on the mortgage loan.

(e)     With the assistance of **Diggles, Gardner** or a Mortgage Broker filled out a Loan Application for the Straw Buyer.  The Straw Buyer knew that the Loan Application was to be used to qualify for a loan from a Lending Institution.

(f)     With the assistance of **Diggles, Gardner** or a Mortgage Broker falsified material information on the Loan Application in order to ensure that the Straw Buyer would qualify for a mortgage loan.  The false material information included but was not limited to inflated income amounts and a false representation that the home was to be

used as a primary residence instead of an investment property.

(g)     **Gardner** or a Mortgage Broker provided the Loan Application to the Straw Buyer to sign despite knowing that material representations contained therein were false.

(h)     At closing, **Gardner** concealed material information about the real estate transaction and submitted the Loan Application that contained false material representations and the sales contract that fraudulently inflated the value of the home to the Lending Institution.  **Gardner** or a Mortgage Broker also prepared a HUD-1 form falsely indicating either that the Straw Buyer was responsible for a down payment despite knowing that **Diggles** had either made the down payment or that **Diggles** infused the Straw Buyer's bank account with the funds for the down payment; or that the residual funds would be paid as cash to the seller.  The closing occurred with the Straw Buyer purchasing the house from the seller at the inflated sales price, the Lending Institution funding the sale, and **Diggles** receiving the amount in excess of the seller's asking price per the side agreement.

(i)     After the transaction closed, **Diggles** made initial payments on the mortgage loan in order to induce the Straw Buyer to conduct additional house purchases; **Diggles** later failed to make payments on the mortgage loan for the house that was the subject of the transaction.

(j)     The profits of the scheme were distributed as follows:

1.     **Diggles'** profit in the scheme was the inflated value of the home less the seller's asking price and less any payments to Property Appraisers, Mortgage Brokers, and Straw Buyers.

2.     The Property Appraisers, Mortgage Brokers, and **Gardner** received fixed payments for their services that were paid through the title company or outside of closing.

9.     The conspiracy and scheme to defraud included but was not limited to the following

properties:

| Street No. | Street Name | City and State |
|---|---|---|
| 4304 | Williamson Lane | Carrollton, Texas |

| | | |
|---|---|---|
| 3532 | Duval Drive | Plano, Texas |
| 2019 | Club View Circle | Corinth, Texas |
| 3713 | Daffodil Lane | McKinney, Texas |
| 824 | Hickory | Jasper, Texas |
| 2713 | Clear Water | Mesquite, Texas |
| 1505 | Curtis Lane | Cedar Hill, Texas |
| 810 | Holly Lane | Jasper, Texas |
| 2120 | Hillcroft Drive | Rockwall, Texas |
| 1516 | Shady Grove | Rockwall, Texas |
| 2025 | Hillcroft | Rockwall, Texas |
| 1107 | Rocky Brook Drive | Cedar Hill, Texas |
| 430 | Sorrel Street | Duncanville, Texas |
| 115 | Pebble Beach | Trophy Club, Texas |
| 1406 | Southbend Lane | Sachse, Texas |
| 813 | Eagle Pass | Heath, Texas |
| 1404 | Wagonwheel | Irving, Texas |
| 345 | Cold Water | Desoto, Texas |
| 1413 | Timberline | McKinney, Texas |
| 7114 | Waldon Court | Colleyville, Texas |
| 4205 | Lone Oak Drive | Mansfield, Texas |
| 1906 | Kings Pass | Heath, Texas |
| 12 | Siesta Circle | Heath, Texas |
| 1406 | Eastus | Dallas, Texas |
| 1656 | Kessler Canyon Drive | Dallas, Texas |
| 15619 | Stone Gable | Houston, Texas |
| 707 | Starlight Pass | Heath, Texas |
| 512 | Mulberry Lane | Desoto, Texas |
| 126 | Clipper Court | Rockwall, Texas |
| 1617 | Mariah Bay Circle | Heath, Texas |

| 213 | Dwyer Court | Rockwall, Texas |
|---|---|---|
| 1810 | Kessler Parkway | Dallas, Texas |
| 2 | Camden Court | Heath, Texas |
| 822 | Faith Trail | Heath, Texas |
| 148 | Country Club Drive | Heath, Texas |
| 106 | Yorkshire | Heath, Texas |
| 7 | Siesta Circle | Heath, Texas |
| 2116 | Kyle Circle | Heath, Texas |
| 823 | Faith Trail | Heath, Texas |
| 4 | Morning Circle | Heath, Texas |
| 3509 | Timber Glen Lane | McKinney, Texas |

10.     On or about the following dates with respect to the following properties, as representative of the manner and means of the conspiracy and in furtherance and execution and attempted execution of the conspiracy, the following co-conspirators took the following actions:

a.      For the property located at 106 Yorkshire Drive in Heath, Texas:

(1)     On or about December 14, 2006, **Diggles** negotiated a contract for sale between a seller and M.W. as purchaser for a sales price of $555,000.

(2)     On or about January 10, 2007, **Diggles** negotiated a contract for sale between M.W. as seller and O.P. as purchaser for a sales price of $753,000.

(3)     On or about January 10, 2007, **Diggles**, **Gardner**, and S.M. caused a Loan Application to be submitted to Freedom Mortgage Corporation that contained the following false representations: that O.P. had a monthly income of approximately $17,000; that the property would be used as a primary residence; and that the proceeds from the sale would go to the seller.

(4)     On or about December 8, 2006, at the request of **Diggles**, R.K. caused an appraisal to be submitted to Superior Lending Mortgage

**DIGGLES, GARDNER - INDICTMENT**
**Page 6 of 13**

that falsely reflected that the property was valued at $750,000.00 despite knowing that the property was properly valued at a significantly lesser amount.

(5)     On or about January 10, 2007, in reliance on the false material representations made by **Diggles**, **Gardner**, S.M., M.W. and others known and unknown to the Grand Jury, Freedom Mortgage Corporation provided $757,284.05 to fund the property transaction.

(6)     On or about January 16, 2007, **Gardner** caused the Deed of Trust to be sent by the United States Postal Service from Capital Title of Texas, in the Eastern District of Texas, to the Rockwall County Tax Assessor, in the Northern District of Texas.

(7)     On or about January 16, 2007, **Diggles** received $147,689.86 as proceeds from the scheme to defraud.

b.     For the property located at 148 Country Club Drive in Heath, Texas:

(1)     On or about January 8, 2007, **Diggles** negotiated a contract for sale between a seller and M.W. as purchaser for a sales price of $535,000.

(2)     On or about March 7, 2007, **Diggles** purchased the home from M.W. for approximately $685,000.

(3)     On or about March 7, 2007, **Diggles** and S.B. caused M.R. to submit to Green Point Mortgage an appraisal that falsely reflected that the property was appraised by D.K, and that the property valued at $685,000, despite knowing that D.K. was deceased and that the property was properly valued at a significantly lesser amount.

(4)     On or about March 7, 2007, **Diggles** caused an Occupancy Affidavit to be submitted to Green Point Mortgage that contained the false representation that the property would be used as his primary residence.

(5)     On or about March 7, 2007, **Gardner** caused to be submitted to Green Point Mortgage a fraudulent statement that the proceeds of the sale would be sent to M.W. when in fact she knew they were being wired to **Diggles**.

(6)     On or about March 17, 2007, in reliance on the false material representations made by **Diggles**, **Gardner**, and S.B., Point Mortgage provided approximately $688,453 to fund the property transaction.

Green
the

(7)     On or about March 8, 2007, **Diggles** received $154,947.20 from the proceeds of the scheme to defraud.

(8)     On or about March 8, 2007, **Gardner** caused the deed to the property to be filed with the county Clerk's Office by sending the same by Federal Express, a commercial interstate carrier from Capital Title of Texas, in the Eastern District of Texas.

c.      For the property located at 2116 Kyle Circle in Heath, Texas:

(1)     On or about November 14, 2006, **Diggles** negotiated a contract for sale between a seller and L.B. as purchaser for a sale price of $512,000.

(2)     On or about April 25, 2007, **Diggles** negotiated a contract for sale between a L.B. as seller and M.W. as purchaser for a sale price of $743,000.

(3)     On or about April 10, 2007, at the request of **Diggles**, M.R. caused to be submitted to Superior Lending Mortgage an appraisal falsely reflecting that the property was appraised by D.K. and was valued at $743,500 despite knowing that D.K was deceased and the property was properly valued at a significantly lesser amount.

(4)     On or about April 17, 2007, at the direction of **Diggles**, S.M. caused to be submitted to Superior Lending a loan application that falsely represented owner occupancy.

(5)     On or about April 25, 2007, **Gardner** falsely stated on the HUD-1 that $208,911.13 in proceeds would be paid to the seller, knowing in fact the proceeds would be paid to **Diggles**.

(6)     On or about April 26, 2007, **Gardner** caused loan materials containing fraudulent representations to be mailed by Federal Express, a commercial interstate carrier, from Capital Title of Texas in the Eastern District of Texas, to J.P. Morgan Chase Bank, in the Northern District of Texas.

(7)    On or about April 26, 2007, in reliance on the false material representations made by **Diggles, Gardner,** M.R., S.M., and M.W., Superior Lending Mortgage provided approximately $748,498.25 to fund the property transaction.

(8)    On or about April 26, 2007, **Diggles** received $208,911.13 as proceeds from the scheme to defraud.

d.    For the property located at 823 Faith Trail in Heath, Texas:

(1)    On or about October 24, 2006, **Diggles** negotiated a contract for sale between a seller and L.A. as purchaser and obtained loans for approximately $475,000.

(2)    On or about April 26, 2007, **Diggles** negotiated a contract for sale between L.A. as seller and M.W. as purchaser for a sale price of $715,000.

(3)    On or about April 24, 2007, at the request of **Diggles**, M.R. caused to be submitted to Fieldstone Mortgage Company an appraisal that falsely reflected that the property was valued at $715,000, despite knowing that the property was properly valued at a significantly lesser amount.

(4)    On or about April 26, 2007, **Gardner** prepared a HUD-1 form that she knew contained the following false material representations: that L.A. as seller would receive cash after the closing.

(5)    On or about April 27, 2007, in reliance on the false material representations made by **Diggles, Gardner**, and M.R., Fieldstone Mortgage Company provided $683,806.90 to fund the property transaction.

(6)    On or about April 30, 2007, **Diggles** received $210,041.08 as proceeds from the fraud scheme.

(7)    On or about May 1, 2007, **Gardner** caused the loan documents containing fraudulent representations to be sent by Federal Express, a commercial interstate carrier, from Capital Title in the Eastern District of Texas to Fieldstone Mortgage Company, in the Eastern District of Texas.

e.    For the property located at 4 Morning Circle in Heath, Texas:

(1)     On or about May 14, 2007, **Diggles** negotiated a contract for sale between a seller and D.H. as purchaser for a sale price of approximately $750,000.

(2)     On or about April 7, 2007, at the request of **Diggles,** M.R. caused to be submitted to Fieldstone Mortgage Company an appraisal falsely reflecting that the property was appraised by D.K. and was valued at $755,000.

(3)     On or about June 13, 2007, **Diggles** and **Gardner** caused to be submitted to Fieldstone Mortgage Company a Loan Application and HUD-1 that contained the following false representations: that D.H. intended to occupy the property as a primary residence, that D.H. had a monthly income of $31,000, that D.H. as borrower would bring cash to the closing, and that the sale proceeds to go to the seller.

(4)     On or about June 14, 2007, in reliance on the false material representations made by **Diggles**, **Gardner**, M.R. and D.H., Fieldstone Mortgage Company provided approximately $713,713.66 to fund the property transaction.

(5)     On or about June 14, 2007, **Diggles** and **Gardner** caused the transaction documents to be sent by Federal Express, a commercial interstate carrier, from Capital Title in Plano, Texas, in the Eastern District of Texas, to Fieldstone Mortgage Company, in the Eastern District of Texas.

(6)     On or about June 14, 2007, **Diggles** received approximately $163,670 as payment from the proceeds of the scheme to defraud.

f.      For the property located at 3509 Timber Glen Lane in McKinney, Texas:

(1)     On or about July 15, 2007, **Diggles** negotiated a contract for sale between a seller and D.H. as purchaser for a sale price of approximately $823,500.

(2)     On or about July 10, 2007, **Diggles**, **Gardner**, and D.H. caused to be submitted to Green Point Mortgage a Loan Application that contained the following false representations: that D.H. had a monthly income of $33,000 and intended to use the property as a primary residence.

(4)     On or about July 8, 2007, at the request of **Diggles**, G.C. caused to be submitted an appraisal falsely reflecting that the property was valued at $823,500.

(5)     On or about July 16, 2007, **Gardner** prepared a HUD-1 form falsely reflecting that the down payment for purchase of the property came from D.H.

(6)     On or about July 16, 2007, in reliance on the false material representations made by **Diggles, Gardner**, G.C., and D.H., Green Point Mortgage provided $785,257.72 to fund the property transaction.

(7)     On or about July 16, 2007, **Diggles** received $130,339.77 from the proceeds of the scheme to defraud.

(8)     On or about July 18, 2007, **Gardner** caused the fraudulent transaction documents to be sent by Federal Express, a commercial interstate carrier, from Capital Title in Plano, Texas, in the Eastern District of Texas, to Greenpoint Mortgage, in the Eastern District of Texas.

10.     As a result of the actions of the co-conspirators, Lending Institutions sustained losses in excess of $6 million while **Diggles** personally gained more than $4 million.

In violation of 18 U.S.C. § 1349.

### NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

Pursuant to 18 U.S.C. § 982(a)(1)(c) and 28 U.S.C. § 2461(c)

As the result of committing the offenses alleged in this Indictment, the defendants shall forfeit to the United States all property, real or personal, that constitutes or is derived from proceeds traceable to the aforementioned offenses, including but not limited to the following:

**Property Belonging to David Diggles:**

1.     At least $4,000,000.00 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate is property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the foregoing offenses alleged in this Indictment.

2.   Two men's Movado watches.

3.   All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located at 1650 Booker T. Washington, Jasper, Texas.

4.   One 2000 Oakwood mobile home located at 1650 Booker T. Washington, Jasper, Texas.

5.   All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located at 444 Fourth Street, Jasper, Texas.

6.   ~~All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located at 3216 Timber Brook Drive, Plano, Texas 3100 Innes Road, Lancaster, Texas.~~

## Substitute Assets

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants –

(a)   cannot be located upon the exercise of due diligence;
(b)   has been transferred or sold to, or deposited with a third person;
(c)   has been placed beyond the jurisdiction of the court;
(d)   has been substantially diminished in value; or
(e)   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(a)(4), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property, including but not limited to all property, both real and personal owned by the defendants.

By virtue of the commission of the offenses alleged in this Indictment, any and all interest the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States.

A TRUE BILL.

_____
GRAND JURY FOREPERSON

JOHN M. BALES
UNITED STATES ATTORNEY

CAMELIA LOPEZ
Assistant United States Attorney
Texas Bar No. 24036990
101 East Park Boulevard, Suite 500
Plano, TX 75074
tel: (972) 509-1201
fax: (972) 509-1209
email: camelia.lopez@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. 4:11CR |
| v. | § | Judge |
| | § | |
| DAVID LAMOND DIGGLES (1) | § | |
| KRIS BECK GARDNER (2) | § | |

## NOTICE OF PENALTY

### Count One

Violation:    18 U.S.C. § 1349
(Conspiracy to Commit Mail Fraud)

Penalty:    A fine of not more than $250,000, and/or
imprisonment for not more than 20 years,
and a Term of Supervised Release for not more than
3 years.

Special
Assessment:    $100.00

Page 1 of 1